IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA,

TIMOTHY HUGH HALL,

    Petitioner,               No. CIV-S-02-1187 DFL KJM P

    vs.

D. G. ADAMS,

    Respondent.          FINDINGS AND RECOMMENDATIONS

                            /

        Petitioner is a state prisoner proceeding with counsel[1] with an application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted in the Superior Court of Sacramento County of two counts of arson of an inhabited structure with the use of an accelerant, one count of presenting a false insurance claim, and one count of presenting a false writing in support of that claim. Petitioner is serving a sentence of fourteen years and eight months imprisonment in the California Department of Corrections. He challenges his conviction on grounds of due process deprivation, prosecutorial misconduct, and ineffective assistance of counsel. Respondent has filed an answer. Petitioner has not filed a traverse.

/////

---

[1] Counsel was appointed before the filing of the Third Amended Petition. The current petition on which this matter is proceeding is the Fourth Amended Petition.

1

I. <u>Background</u>

Following sentencing, petitioner appealed his convictions and sentences to the California Court of Appeal. The Court of Appeal summarized the facts supporting petitioner's convictions and sentences as follows:

> This case arose from two fires at defendant's condominium, which occurred about four hours apart. . .
>
> On July 20, 1995, at 10:12 p.m., one of the defendant's neighbors reported a fire at defendant's townhouse condominium in Sacramento. The condominium was attached to another unit; defendant and his live-in cohabitant (now wife), Evelyn Haqq, and her three children lived in the condominium; Francisco Muñoz and his family lived in the adjoining condominium.
>
> When the firefighters arrived, defendant's condominium was completely secured–the windows were barred and the doors were locked. Defendant approached and unlocked the front door with a key.
>
> The firefighters found a small fire in the dishwasher cabinet and quickly extinguished it. They turned off the electrical circuit to the dishwasher and notified defendant they had done so. A fire department captain requested that defendant not spend the night at the condominium, given the odor, the dampness, the power availability, and the rare possibility of a "rekindle" (a reignition of the fire). Defendant agreed to spend the night elsewhere.
>
> At the scene, defendant stated he had been out for the evening, and the children were staying with relatives. Fire Investigator Frank Romo concluded the dishwasher was the only potential source of accidental ignition, but he did not determine the cause of the fire on the night of July 20. Because he had never seen a dishwasher fire, Romo intended to return the next day with his supervisor to further consider the origin of the blaze.
>
> Defendant's neighbor, Francisco Muñoz, arrived home just after the fire had been extinguished. In an interview with Investigator Romo on July 21, Muñoz said that he saw defendant return to his own condominium on July 21 (after the fire) and leave around 1:25 a.m. About 15 minutes after defendant left, Muñoz told Romo, an unidentified person banged on Muñoz's door and alerted him of a second fire. Haqq testified that on the night of the fire defendant left their hotel about 12:25 a.m. to obtain some personal items for her at the condominium; she said defendant returned to the hotel within 30 minutes of leaving.

/////

About 1:50 a.m., the fire department received a call about the second fire. When the firefighters arrived, defendant's condominium was almost fully engulfed in flame. Again, the residence was entirely secured, with the doors locked and the windows barred. The firefighters forced in the front door and put out the fire.

Investigator Romo concluded, based on extensive evidence, that the second fire had been deliberately set with a liquid accelerant. An insurance investigator, Edward Smith, agreed.

Romo also concluded, and Smith agreed, that the first fire was arson with use of a liquid accelerant. A dog trained to identify accelerant residue found residue in two areas, one in the area of the first fire (in the under-sink kitchen cabinet) and the other in the hallway between the kitchen and the living room. Romo concluded the second fire was not the product of the first fire.

The prosecution presented the following circumstantial evidence that defendant had perpetrated both arsons.

Defendant had insurance coverage through Civil Service Employees Insurance Company (CSE) for the contents of the condominium up to $50,000. He made a claim in that amount shortly after the fires.

To substantiate his claim, defendant submitted photographs of his personal property; the photos were "fairly pristine"–in fact, in "perfect condition"–in contrast to the heavily burned file cabinet in which they had been stored. CSE could not verify much of this claim, and paid defendant about $8,700; defendant submitted to CSE receipts of about $15,000 for replacement property he had purchased.

Defendant had incurred considerable debt in the year preceding the fires. This included three mortgages on the condominium (totaling nearly its entire value, as stated by defendant) to go along with an existing mortgage. In addition, defendant obtained four personal finance loans totaling about $5,000. In obtaining many of these mortgages and loans, defendant overstated his monthly income by about $1,000 ($2700 per month instead of $1700 per month).

Defendant filed for bankruptcy on September 7, 1995, listing liabilities of $146,975.

Unless the arsonist went through an unbarred second story window, he or she would had to have had a key to the condominium, as the doors were deadbolt-locked from the outside at both fires and the first floor windows were barred securely. Defendant told Investigator Romo that only he and Evelyn Haqq had keys to the condominium before the first fire; he told a CSE

> investigator, Michael Kinnison, that his 13-year-old son had a key as well; and he told a private investigator hired by the homeowners' association that after the first fire, he had left a key with Francisco Muñoz --Muñoz denied this.
>
> Defendant told insurance investigators that he and Haqq were bowling in their regular league at the time of the first fire. An employee of the bowling alley testified that this league should have ended no later than 9:30 p.m.; the bowling alley was about 10 minutes from defendant's residence. Haqq testified that she and defendant were at the bowling alley until about 9:45 p.m.
>
> Defendant had been employed as a firefighter from 1977 to 1983.
>
> Defendant told an insurance investigator that he had turned the dishwasher electrical circuit back on because it was connected to the refrigerator and he wanted to avoid spoilage.
>
> There was also evidence that defendant had obtained approximately $20,000 from his insurer for a 1983 fire to his Walnut Creek residence, and approximately an $80,000 settlement from his insurer for a 1986 arson fire to his Oakland residence. The trial court instructed the jury that this evidence could be used only to show intent, motive or knowledge with respect to arson or insurance fraud, and could not be used to show a criminal disposition. . . .

People v. Hall, No. C033658, slip op. at 2-6 (3d App. Dist. Cal. Nov. 8, 2001) ("Op.").[2]

The Court of Appeal upheld petitioner's convictions, but did modify petitioner's sentence. Id. at 19. The modification, staying a five-year concurrent sentence, did not affect the total length of petitioner's prison term. Petitioner sought review of the Court of Appeal's decision in the California Supreme Court. That request was denied without comment. Answer at 3. Following direct appeal, petitioner filed requests for collateral relief at all three levels of California courts. All of those requests were denied. Id.[3]

---

[2] The appellate court's opinion, and other state court opinions cited herein, have been lodged with this court.

[3] Copies of the Supreme Court's denial of review on direct appeal, petitioner's habeas corpus petition filed in the state trial court and the state Supreme Court's denial of habeas are attached as exhibits to respondent's motion to dismiss filed October 25, 2002. See Docket No. 12; see also Docket No. 13 (lodging of habeas petition submitted to Supreme Court).

II. Standards For Granting Habeas Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[4] Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by

/////

---

[4] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

5

§ 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

/////

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

III. Arguments And Analysis

    A. Admission Of Prior Insurance Claims (Claim 1)

Petitioner claims he was denied due process when the trial court allowed the prosecution to present evidence of petitioner's prior residential fire insurance claims, as well as personal injury and property damage insurance claims. Petitioner argues that such evidence was "unduly prejudicial" and denied him of his right to a fair trial. Fourth Am. Pet. (Pet.) at 5-8.

Generally, state law determines the admissibility of evidence, and an evidentiary determination by a state court is not reviewable in a federal habeas corpus proceeding. See Estelle v. McGuire, 502 U.S. 62, 68 (1991). However, the issue before this court is whether admission of evidence rendered the trial so arbitrary and fundamentally unfair that it violated federal due process. See Reiger v. Christensen, 789 F.2d 1425, 1430 (9th Cir. 1986).

On direct appeal, the California Court of Appeal addressed this claim and related claims arising under state law as follows:

> Defendant contends the trial court abused its discretion under Evidence Code sections 1101 and 352 and violated due process by admitting evidence of his prior residential fires and prior fire and non-fire insurance claims. We find no prejudicial error.
>
> As for the prior residential fires and their accompanying insurance claims, the trial court admitted evidence that defendant had obtained approximately $20,000 from his insurer for a 1983 fire to his Walnut Creek residence, and an approximately $80,000 settlement from his insurer for a 1986 arson fire to his Oakland residence.
>
> As for non-fire insurance claims, the trial court admitted the following evidence. Under an auto insurance policy with CSE, defendant made claims for vandalism in February 1994 and for collision losses in October 1994 and March 1995. In 1997, defendant, along with Haqq and the children, obtained a $4,500 personal injury settlement from a painting company due to "painting . . . of fixtures in the apartment they were renting."

The trial court instructed in part regarding the evidence of prior fires and insurance claims:

"This evidence, if believed, may not be considered by you to prove that the defendant is a person of bad character or that he has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining that it tends to show the following:

"Evidence of prior residential fires may be considered for the limited purpose of [showing] the existence of the intent, which is a necessary element of the crime charged, knowledge and motive for the commission of the crime charged.

"Evidence of the insurance claims other than the prior residential fires may be considered for the limited purpose of knowledge and the existence of motive for the commission of the crime charged.

" . . . You are not permitted to consider this evidence for any other purpose."

Defendant argues that "[i]n the present case, the evidence of intent, motive, and knowledge deriving from the previous fires and [his] insurance claims had little probative value because the issues of intent, motive, and knowledge were not really what the prosecutor needed to prove. Identity was key." And, goes the argument, this evidence did not show identity.

The trial court did not prejudicially err in admitting this evidence for the limited purpose it stated. As noted in *People v. Foster*, upon which the trial court relied:

"Evidence Code section 1101, subdivision (b) allows for the admission of prior crimes or acts when relevant to prove issues in dispute other than the defendant's disposition to commit such acts. Evidence of prior fires involving property of a defendant charged with arson and insurance fraud is admissible to prove intent, motive and knowledge. (*People v. Maler* (1972) 23 Cal.App.3d 973, 978-980 [other citations omitted].)

"Evidence of the prior fire and insurance settlement [involving the defendant Foster's property, which the evidence showed was destroyed by arson] was relevant in the case at bench to prove [Foster's] intent and motive to collect on insurance after its arsonous destruction and his familiarity with recovery on an insurance claim as a ready source of cash. . . . [Foster's] contention that the prior burning was admitted for the purposes of showing identity lacks merit. The trial court clearly stated its reasons for admitting the evidence of the . . . burning [of Foster's property] and identity was not a reason cited." [Footnote omitted.]

8

> Defendant's argument–that evidence of intent, motive and knowledge was irrelevant here because identity of the arsonist was the key–mistakenly assumes that if the prosecutor merely proved that defendant set the fire, all else was proven. But defendant was charged with arson *and* insurance fraud, and the evidence of prior fires and insurance claims to show defendant's intent, motive, and knowledge was relevant in proving both those offenses, with one exception noted below.[Fn1] An argument similar to defendant's was made and rejected in *People v. Maler*, which serves as the foundation of the *Foster* decision.[Fn2]
>
> The one exception we just referred to concerns the 1983 fire and the issue of intent. Unlike the 1986 fire, the 1983 fire was not shown to involve any illicit activity. As stated above, the trial court instructed that "[e]vidence of prior residential fires [i.e., the 1983 fire and the 1986 arson fire] may be considered for the limited purpose of [showing] the existence of the intent which is a necessary element of the crime charged, knowledge and motive for the commission of the crime charged."
>
> However, even if the trial court erred in admitting evidence concerning the 1983 fire to show intent, any such error was harmless in light of the evidence summarized in the previous section of this opinion, and given the fact that the 1983 fire was still relevant in showing fire insurance knowledge and arguably motive. It is not reasonably probable that defendant would have fared any better had the purpose of the 1983 fire evidence been restricted to showing knowledge and motive...[Fn3]
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> For all these reasons, we also reject defendant's claim that in admitting this evidence the trial court prejudicially abused its discretion under Evidence Code section 352 because the evidence was more prejudicial than probative, and prejudicially violated due process by allowing the jury to consider irrelevant evidence.
>
> ──────────
>
> [Fn1] *People v. Maler* (1972) 23 Cal.App.3d 973, 978-980 (*Maler*).
>
> [Fn2] *Maler*, *supra*, 23 Cal.App.3d at pages 978-980; *Foster*, *supra*, 114 Cal.App.3d at pages 433-434.
>
> [Fn3] *People v. Watson* (1956) 46 Cal.2d 818, 836.

Op. at 8-13.

/////

9

With regard to this claim, petitioner has not met his burden under 28 U.S.C. § 2254(d). Rather, he merely states, in conclusory fashion, that "identity of the arsonist was key, and the evidence of petitioner's prior 'bad acts' simply was not probative or relevant to the question of who set the fires at petitioner's residence." Pet. at 7:1-4. Petitioner has not shown that the California Court of Appeal's adjudication of petitioner's denial of due process claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Furthermore, petitioner has not shown he was denied due process such that the evidence admitted rendered his a fundamentally arbitrary and unfair trial. As noted by the Court of Appeal, the evidence of prior insurance claims was relevant to the question of petitioner's intent to commit arson and insurance fraud, his motive for doing so and/or petitioner's knowledge that committing insurance fraud would provide petitioner with cash. RT 54:3-60:10. Because there were permissible inferences to be drawn by the jury from evidence concerning petitioner's other insurance claims, and jurors were instructed how to properly consider the evidence, admission of such evidence did not violate due process. RT 1392:19-1393:16; see Jammal v. Van De Kamp, 926 F.2d 918, 920 (9th Cir. 1991) ("Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" (emphasis in original)).

B. Prosecutorial Misconduct (Claim 2)

Petitioner also claims the prosecution engaged in misconduct by "opining that petitioner lied about his income on a loan application" in violation of the due process clause of the Fourteenth Amendment. Pet. at 8:9-17. A due process violation based on prosecutorial

/////

misconduct occurs if a comment made by the prosecution rendered the entire trial "fundamentally unfair." See Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974).

On direct appeal, the California Court of Appeal addressed this claim as follows:

The alleged misconduct arose when the prosecutor was questioning CSE's fire investigator, Michael Kinnison. The questioning concerned whether the monthly income defendant had reported to CSE at the time of the fires was lower than the monthly income defendant had reported on a loan application about a year earlier. Defendant objected to the relevance of this questioning. The prosecutor explained the relevance as "being that the loan application shows a far higher income." The trial court pressed, "And the relevance is?" The prosecutor responded, with the jury present: "The relevance is he's getting a loan that he wouldn't have otherwise qualified for unless he lied about his income." Defendant objected and moved for a mistrial.

Outside the jury's presence, the trial court noted that the prosecutor had not listed during the pretrial motion phase anything about false statements concerning a loan application. The prosecutor said the evidence was to show, as stated in his opening statement, defendant's severe financial difficulties. Said the prosecutor: "What better example of being over-encumbered with a loan [than] to put down on your loan application a far higher income than what you have in order to get a loan."

The trial court denied the motion for mistrial, and admonished the jury:

" . . . I'm going to order you at this time to disregard the last statement by the prosecutor regarding the financial information on the . . . loan [application]. That information is being presented in this trial for one purpose, and that purpose is to show motive . . . . [T]he People's theory is that [defendant] gave an inflated income [on the loan application] in order to qualify for this loan and that is evidence indicating that [defendant's] in dire financial straights, and, therefore, his motive as to the crimes which he is charged with.

"You may not consider that evidence . . . as evidence that defendant has bad character. You may not consider it as evidence that the defendant has a disposition to commit crimes. You may not consider it–that the defendant has committed a crime by making those statements. And, in fact, . . . the defendant has never been charged with a crime in regards to those statements.

"I need to know, now, is there anybody who cannot follow that Court order and put that out of your mind completely? Anybody

11

> have problems with that? If so, please raise your hand." No juror or alternate raised a hand.
>
> Kinnison then testified that defendant listed his monthly income at the time of the fires as comprising approximately $1,570 in federal workers' compensation, $170 in veterans' disability benefits, and $400 from Haqq. Kinnison said that defendant explained the monthly income listed on the loan application–$1,527 plus other income of $1,165–as a mistake.
>
> Subsequently, the prosecutor elicited testimony from the trustee for defendant's bankruptcy that defendant had reported his monthly income in his September 1995 bankruptcy papers as $1,742.
>
> Outside the jury's presence, defendant again moved for mistrial. He contended that the trustee's testimony about defendant's monthly income undoubtedly reminded the jury of Kinnison's earlier testimony that defendant had overstated his income on the loan application.
>
> The applicable federal . . . standard[] regarding prosecutorial misconduct [is] well established. A prosecutor's intemperate behavior violates the federal Constitution when it comprises a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process. . . [Quotation marks and citations omitted.] . . . . . . . . . . . . . . . . . .
>
> The prosecutor's conduct here did not comprise a pattern so egregious that it rendered the trial fundamentally unfair. The federal Constitution was not violated.

Op. 13-16.

Here again, petitioner has not met his burden; he cites only to a series of cases, including two recent Supreme Court decisions, without explaining how any of the cases support this claim. See Pet. at 9:2-24 (closing with citation to Bell v. Cone, 543 U.S. 447, 125 S.Ct. 847 (2005) and Middleton v. McNeil, 541 U.S. 433, 124 S.Ct. 1830 (2004)).[5]

Moreover, the petitioner's trial was not rendered fundamentally unfair by the

---

[5] While petitioner does cite to United States v. Garcia-Guizar, 160 F.3d 511, 520 (9th Cir. 1998), which found the prosecutor engaged in impermissible vouching when he called the defendant in a federal criminal trial a liar, petitioner's counsel does not address distinguishing aspects of that case, including the apparent lack of a curative instruction and, in context, the Garcia prosecutor's having gone beyond calling for a reasonable inference to be drawn.

12

actions of the prosecution, in light of the court's stern admonition to the jury to disregard the statement made by the prosecution in open court. RT 834:10-835:7. It is generally presumed that jurors follow the court's instructions regarding whether, and in what respect, something can be considered evidence. See Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997). Nothing in the record suggests that jurors did not follow the court's instructions. In any case, the jurors were not presented with evidence so prejudicial that no instruction could cure it. Compare United States v. Bland, 908 F.2d 471, 473 (9th Cir. 1990) (court's comments that defendant on firearms charge was child molester and killer could not be cured by instruction); United States v. Gillespie, 852 F.2d 475, 479 (9th Cir. 1988) (testimony that defendant on trial for child molestation had homosexual relationship with adopted father could not be cured).

Based on the forgoing, petitioner's claim of prosecutorial misconduct is barred by 28 U.S.C. § 2254(d). Furthermore, petitioner has not shown that his constitutional right to due process has been violated.

### C. Ineffective Assistance Of Counsel (Claims 3 And 4)

Petitioner asserts his trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment. The Supreme Court has enunciated the standards for judging ineffective assistance of counsel claims. See Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court then must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.;

1 see also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v.
2 Schaflander, 743 F.2d 714, 717-18 (9th Cir. 1984) (per curiam).
3       Petitioner alleges two instances of ineffective assistance of counsel, both of which
4 were presented to the California courts on collateral review. Pet. at 10-14. The Superior Court
5 of Sacramento County was the only court to issue a reasoned decision with respect to these
6 claims of petitioner's.
7       1. Testimony of Neighbor
8       Petitioner claims trial counsel was ineffective for failing to secure the testimony
9 of a Spanish-speaking neighbor who told petitioner before trial that she saw two young boys
10 running from petitioner's condominium just before the start of the second fire. Petitioner avers
11 he relayed this information to counsel well before trial. Pet. at 10.
12       The Superior Court of Sacramento County rejected petitioner's claim, observing
13 that petitioner had not stated facts warranting relief. Specifically, the court noted petitioner's
14 trial counsel, in a new trial motion, had represented that petitioner had not provided him with
15 sufficient information to locate the neighbor, and that in moving for habeas relief, petitioner said
16 only that he had obtained a "possible name" and "possible location" for the neighbor. December
17 4, 2000 Superior Court Op. at 1-2.
18       Before this court, petitioner still has not provided sufficiently concrete
19 information to show that even if failing to call the neighbor in question as a witness was
20 unreasonable, the omission had any effect on the outcome of his case. Standing alone, the fact
21 that two boys were running from petitioner's condominium provides little evidence regarding the
22 origin of the fires for which petitioner was convicted. When considered in conjunction with the
23 fact that the evidence presented to jurors indicated the fire started inside petitioner's locked
24 house, see, e.g., RT 274:22-276:4, 464:4-8, 466:5-19, 550:18-551:13, 565:13-567:19, the
25 evidence would have had little probative value. Petitioner's first ineffective assistance of counsel
26 claim lacks merit and is barred by 28 U.S.C. § 2254(d).

### 2. Death Threats

Petitioner asserts trial counsel also was ineffective for failing to introduce evidence indicating petitioner had received threatening phone calls before the July 20, 1995 fires. Petitioner claims that these death threats may have originated from individuals related to a person in Oakland who, with petitioner's help, was convicted of murder. Pet. at 13 & n.6.

Here again, the Superior Court found petitioner had not presented enough factual support for his claim to warrant relief; rather, at the time, petitioner was still waiting for information to confirm the death threats and the identity of those responsible. December 4, 2000 Superior Court Op. at 3. The court also found the evidence that petitioner received death threats was insufficient to warrant granting petitioner relief without evidence indicating that someone other than petitioner set the fires at his condominium. Id.

Here as well, petitioner has not met his burden of showing the state court resolved this claim improperly. The record reveals that petitioner's trial counsel apparently attempted, without success, to introduce evidence of disturbing phone calls through petitioner's wife's testimony. See RT 1214:24-1218:13. Moreover, petitioner's position, that evidence of the threats, if admitted, would have changed his trial's result, is mere speculation; he provides no credible detail to support his conclusory position. Cf. Ward v. Whitley, 21 F.3d 1355, 1362 (5th Cir. 1994).

Petitioner's second ineffective assistance of counsel also lacks merit and is barred by 28 U.S.C. § 2254(d).

### IV. Conclusion

For the foregoing reasons, this court will recommend that petitioner's application for writ of habeas corpus be denied.

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 28, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

---

1 hall1187.157(1)